# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 22-258V

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | | |
| MYRTLE BARRETT, | * | Chief Special Master Corcoran |
| Petitioner, | * | Filed: October 30, 2024 |
| v. | * | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | | |

*David Proffitt*, Proffitt & Cox, LLP, Columbia, SC, for Petitioner.

*Naseem Kourosh*, U.S. Dep't of Justice, Washington, DC, for Respondent.

**DECISION GRANTING AWARD OF ATTORNEY'S FEES AND COSTS**[1]

On March 7, 2022, Myrtle Barrett filed a petition for compensation under the National Vaccine Injury Compensation Program (the "Program"),[2] (ECF No. 1), later amending her claim (ECF No. 23). Petitioner alleged that she suffered from myasthenia gravis ("MG") resulting from Tetanus-diphtheria-acellular pertussis and/or pneumococcal polysaccharide vaccines received on July 21, 2021. She also contended she experienced the Table claim of a shoulder injury related to vaccine administration in both shoulders resulting from the administration of both vaccines.

Both parties filed expert reports, and on December 5, 2023, Respondent filed a Motion to Dismiss (ECF No. 44). Petitioner thereafter filed a Motion for a Ruling on the Record and a

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

1

Response in Opposition to Respondent's Motion to Dismiss on March 28, 2024 (ECF No. 47). After a complete review of the record, I denied entitlement on September 12, 2024. Entitlement Decision, dated September 12, 2024 (ECF No. 48). That determination was not appealed.

On September 24, 2024, Petitioner filed a motion for a final award of attorney's fees and costs. Motion, dated September 24, 2024 (ECF No. 52) ("Fees Mot."). Petitioner requests a total of $81,019.58, reflecting $57,994.00 in fees incurred for the services of Mr. David Proffitt and two paralegals, $22,623.58 in costs, and $402.00 for the filing fee paid by Petitioner. Fees Mot. at 5-6. Respondent challenged the Petition's reasonable basis. Response, dated October 8, 2024 (ECF No. 53) ("Response"). Petitioner responded to the opposition on October 10, 2024. Reply (ECF No. 55) ("Reply").

On October 21, 2024, I filed a Fees Decision, awarding attorney's fees and costs (ECF No. 56). My decision reduced awardable attorney's costs by $13,600.00, due to incomplete documentation of the costs incurred by Petitioner's expert. The same day, however, Petitioner filed a motion for reconsideration and submitted the missing invoice. Motion (ECF No. 57) ("Reconsideration Mot."). Respondent filed a response on October 22, 2024, requesting that I exercise my discretion in determining a reasonable award (ECF No. 58). I subsequently granted the motion, withdrawing my initial fees decision in light of Petitioner's supplemental filing (ECF No. 59).

For the reasons set forth below, I now hereby **GRANT** Petitioner's motion in part, awarding fees and costs in the total amount of **$80,072.58**.

## ANALYSIS

### I.     Petitioner's Claim had Reasonable Basis

Although the Vaccine Act only guarantees a fees award to successful petitioners, a special master may also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). Importantly, establishing reasonable basis does not *automatically* entitle an unsuccessful claimant to fees, but is instead a threshold obligation; fees can still thereafter be limited, if unreasonable, or even denied entirely.

2

A claim's reasonable basis[3] must be demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the *claim*—counsel's conduct is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. In addition, reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation). As a result, a claim can "lose" reasonable basis over time.

The standard for finding the existence of reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.*, 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).[4]

Respondent argues that Petitioner's claim lacks reasonable basis because she has not set forth sufficient objective evidence that her MG was caused by the vaccines. Response at 6. Respondent notes that causation-in-fact claims for disease onset occurring more than two months post-vaccination are routinely rejected in the Program. *Id.* The objective evidence in this case, however, as supported by medical records, establishes that Petitioner's MG began *nine months* after the relevant vaccinations. *Id.* at 7. And even if her onset began at the three-month mark, this still falls outside the two-month medically-acceptable timeframe. *Id.*

In reaction, Petitioner contends that the evidence (as contained in her affidavits, the medical records, and the opinion of a medical expert) far exceed the "scintilla" required for a special master

---

[3] Because this claim's good faith is not in dispute, I do not include a discussion of the standards applicable to that fees prong.

[4] *See also Chuisano*, 116 Fed. Cl. at 285 (cautioning against rigid rules or criteria for reasonable basis because they would subvert the discretion of special masters and stating that an amorphous definition of reasonable basis is consistent with the Vaccine Act as a whole).

3

to find grounds for a reasonable basis for her claim. Reply at 7. Petitioner clarifies that she and her counsel obtained and reviewed numerous medical records before deciding to proceed with filing a petition. *Id.* at 8. And Dr. Simpson's opinion that the vaccines in question caused Petitioner's MG provide further proof that a reasonable basis existed for her claim. *Id.* 8-9.

Petitioner's claim was ultimately unsuccessful, and it certainly was not one that was likely to succeed given the record. I nevertheless find it possessed sufficient objective basis to justify a fees and costs award, given the lenient standard applicable to reasonable basis inquiries. Petitioner received the vaccine at issue and experienced the injury alleged, as corroborated by the medical record. Petitioner also provided some evidence (in the form of affidavits and an expert opinion) to bolster her claim that her MG onset was much earlier than what the record suggested. And while she acknowledged that her symptoms are first noted in the medical records as beginning on October 21, 2021 (three months post-vaccination), she represents that she experienced comparable symptoms immediately following the vaccines. *See* Affidavit of Myrtle Barrett, dated December 13, 2022, filed as Ex. 22 (ECF No. 26-22). Petitioner's expert relied in part on these contentions of a timely onset. Simpson Report, dated Sep. 19, 2023, filed as Ex. 31 (ECF No. 39-1).

To have a "reasonable basis" a claim must, at a minimum, be supported by medical records *or* medical opinion. *Chronister v. Sec'y of Dep't of Health & Hum. Servs.*, No. 89-41V, 1990 WL 293438, at *1 (Cl. Ct. Spec. Mstr. Dec. 4, 1990). Here, the medical records do not support an onset prior to three months, but the fact that the expert report relies on Petitioner's claims does not render the report useless. *Chronister*, 1990 WL 293438 (finding a reasonable basis for the filing of a vaccine claim for which petitioner's expert offered an opinion relying on the parents' factual account even though the special master declined to credit that account). And while it is true that the claim ultimately failed because of the onset issue, it has long been understood that the likely *success* of a claim is not determinative of the claim's reasonable basis, an inquiry which considers whether objective proof exists to support it. *See Livingston v. Sec'y of Health & Human Servs.*, No. 12–268V, 2015 WL 4397705, at *6 (Fed. Cl. Spec. Mstr. June 26, 2015). It is certainly my experience in the Program that there is no hard and fast rule about what period of time between vaccination and onset is reasonable for all claims, and special masters do find that somewhat lengthy timeframes can still be medically acceptable (even though there does come a point for any injury where the gap between onset and vaccination is simply too long to find vaccine causation).

In most cases, determining reasonable basis should not involve ascertaining if the claim was a "long-shot," and then penalizing claims that fit that bill. Instead, the inquiry should simply involve whether some bare level of evidence existed to justify the claim's initiation. *Fordahl v. Sec'y of Health & Hum. Servs.*, No. 21-1086V, 2022 WL 17822506, at *3 (Fed. Cl. Spec. Mstr. Nov. 14, 2022). In this case, Petitioner claimed she developed symptoms shortly after being vaccinated, and these claims were credited in Dr. Simpson's expert report. I thus find that reasonable basis existed for this claim, and that there are no other grounds for a denial of fees. (Of

4

course, it is my hope that present counsel will in future cases take care not to advance a claim like this, where the record suggests an onset too long after vaccination to be acceptable, given the nature of MG. The failure to do so will likely result in a different reasonable basis outcome).

## II.   Calculation of Fees

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method - "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis* exception"). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner requests the following rates for her attorney and support staff, based on the years work was performed:

| **Attorney** | 2022 | 2023 | 2024 |
|---|---|---|---|
| **Mr. David Proffitt (Attorney)** | $450.00 | $475.00 | $500.00 |
| **Ms. Susan Romano (Paralegal)** | $170.00 | $180.00 | -- |
| **Ms. Leticia Pena (Paralegal)** | -- | $180.00 | -- |

Fees Mot. at 6.

Mr. Proffitt practices in Columbia, SC —a jurisdiction that has been deemed "in forum." Accordingly, he should be paid forum rates as established in *McCulloch. See Hubbard v. Sec'y of Health & Hum. Servs.*, No. 20-0981V, 2023 WL 5802460, at *2 (Fed. Cl. Spec. Mstr. July 25, 2023). The rate requested for time billed in 2022 has been allowed in other cases, and the newly-requested rate for time billed in 2024 ($500/hour) is consistent with what has previously been

5

awarded, based on the attorney's work and experience in the Program, and is otherwise in accordance with the Office of Special Masters' fee schedule.[5] *Id.* However, the requested rate for 2023 is unacceptable since counsel was previously awarded the lesser sum of $450. *Hubbard,* 2023 WL 5802460, at *2. Accordingly, I will award Mr. Proffitt that rate. This results in a $965 reduction from the sum awarded for Mr. Proffitt's work in 2023 (38.6 hours at a rate of $450 per hour, rather than $475 per hour). The total sum for attorney's fees after reduction is $57,029.00.[6]

### III. Calculation of Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No.10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner seeks $22,623.58 in outstanding attorneys' costs, including the filing fee, medical record retrieval costs, mailing costs, and costs associated with the work of one expert, David Simpson, M.D. Fees Mot. at 5; ECF No. 52-2 at 22-95. Dr. Simpson prepared one written report in this case and submitted three invoices, requesting a total amount of $20,475.00 (29.25 hours of work billed at $700 per hour and a $2,500 retainer fee). *Id.* at 75, 89, 95; Mot. for Rec. at 7. Petitioner also seeks $402.00 for Petitioner's filing fee. ECF No. 52-3.

Although Petitioner had not adequately substantiated the costs accrued for the services of Dr. Simpson at the time of my initial decision, she has done so now. One of Dr. Simpson's invoices details 4 hours of work (3.5 for record review and 0.5 for report editing) for a total of $2,800.00. ECF No. 52-2 at 89. The invoice also asserts the existence of a "prior balance" of $13,600.00, but at the time of my initial fees decision, there was no documentation that clarified to what this "prior balance" referred. *Id*. Accordingly, due to unclear documentation, I reduced the attorney's costs by $13,600.00, and awarded the lesser amount of $9,023.58.

---

[5] OSM Attorneys' Forum Hourly Rate Fee Schedules, https://www.uscfc.uscourts.gov/node/2914 (last visited October 18, 2024).

[6] I note also that I will not be awarding any fees incurred in seeking reconsideration of my earlier fees decision. Reconsideration was occasioned solely by counsel's failure to substantiate properly all costs requested herein. Counsel should not receive a windfall for his mistake.

Shortly after, however, Petitioner submitted the missing invoice. Reconsideration Mot. at 7. The invoice details 23 hours of work, billed at $700/hour, minus the $2,500 retainer fee – equating to a total of $13,600.00 *Id*. I conclude that the sum was reasonable for the work performed, and I do not find any reason to make reductions. The same is true for the other litigation-related costs. I will therefore award the total requested amount for attorney's costs – $22,623.58 – along with $402.00 for Petitioner's filing fee.

## CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a final fees award, I **GRANT IN PART** Petitioner's Motion for Attorney's Fees and Costs. I award **$80,054.58** reflecting (a) $57,029.00 in attorney's fees and $22,623.58 in attorney's costs, in the form of a check made jointly payable to Petitioner and her attorney, Mr. David Proffitt, and (b) $402.00 in Petitioner's personally-incurred costs, in the form of a check payable to Petitioner.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[7]

**IT IS SO ORDERED.**

s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.